IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER STOJANOVIC,

                Plaintiff,

       v.

DOUG BELLILE, ANN MORAN,
DANIEL KATTENBRAKER, LAURA THOMAS,
MICHELLE FINGER, MIKE D. KRAUSE, GREG HOLMES,
GARRET LUTZ, LORI FOX, DON WEBER,
MIKE GARRIGAN, CORY SMITH, BILL DYNES,
SUZANNE BROWN AND GREG GILES,

                Defendants.

OPINION AND ORDER

19-cv-729-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Peter Stojanovic is proceeding on claims that staff at Sand Ridge Secure Treatment Center failed to provide him adequate medical treatment for a heart attack and related symptoms that lasted for several days.  Before the court is defendants' motion for summary judgment, dkt. #31, and plaintiff's motion for assistance in recruiting counsel. Dkt. #52.  For the reasons set out below, I will grant defendants' motions as to all claims except plaintiff's claims that defendants Lori Fox and Garret Lutz violated his due process rights by failing to arrange medical treatment for him on July 9, 2018.  However, I will give defendants the opportunity to submit additional evidence as to whether Fox and Lutz were working at Sand Ridge on July 9.

I will deny plaintiff's request that the court recruit counsel for him.  I am sympathetic to plaintiff's request, as I know that it is extremely difficult for pro se and detained

individuals to find counsel on their own.  But it is also difficult for the court to find lawyers or experts willing and able to work on these types of cases.  As I explained in my previous orders denying plaintiff's request for assistance in recruiting counsel, dkt. ##12, 24, the court must consider whether the legal and factual difficult of a case exceeds the litigant's ability to prosecute it.  Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007).  Plaintiff has demonstrated throughout this case that he is intelligent and more capable than the average pro se litigant.  He has gathered and submitted evidence and has made coherent legal arguments.  The reason that most of plaintiff's claims fail is because the facts and evidence do not support constitutional liability under the circumstances.  Therefore, I am not persuaded that I should recruit counsel in this case.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

Plaintiff Peter Stojanovic is a patient civilly committed at Sand Ridge Secure Treatment Center under Chapter 980 of the Wisconsin Statutes.  All defendants worked at Sand Ridge during the relevant time period.  Lori Fox, Garret Lutz, Don Weber, Bill Dynes and Mike Garrigan were employed as psychiatric care technicians.  They worked on patient housing units, developed treatment plans and therapeutic activities for patients, and performed security-related functions.   Michele Finger was a pharmacy technician who distributed medications to patients.  Greg Giles was a treatment facilitator who facilitated

2

individual and group treatment. Laura Thomas was the director of nursing and the health services unit, which is responsible for providing medical services to patients. Dr. Daniel Kattenbraker was the medical director; Doug Bellile was the director of Sand Ridge; Ann Moran was the deputy director; Mike Krause was a unit director; Greg Holmes was the psychiatric care supervisor; Cory Smith was a client rights facilitator; and Suzanne Brown was a social worker.

On July 9, 2018, plaintiff began experiencing a headache, stomachache and other discomfort. He started vomiting while showering, and he began to experience severe pain in his head and chest. The parties' versions of what happened next differ substantially.

According to plaintiff, defendants Lutz saw him vomiting and asked whether he was okay. Plaintiff later came to the desk where Fox and Lutz were working on the unit, and told them that he was sick. He says that Fox and Lutz did not notify a shift manager or health services. Plaintiff says that he continued to feel ill, and on July 12, he was experiencing a headache, nausea, chest pain and numbness in his right arm. He reported his symptoms to Weber and Lutz, who were on duty at the time. Weber called health services staff, who instructions were for plaintiff to take Tylenol and put in a request to see a doctor. Plaintiff says that he told Weber he needed to see someone right away, and Weber responded that no one was available. Weber told him to bring a health services request slip to the medication cart when it came on the unit. Plaintiff also says that on July 13, he complained to Fox about his symptoms and stated that he had put in a health request but had not been seen. Fox told plaintiff that he had to wait to be called by health services because he had

submitted a health form already.

According to defendants's version of events, neither Lutz nor Fox was working at Sand Ridge on July 9. Instead, Weber was working on plaintiff's unit. Defendants have submitted documents to support their assertion, including a schedule showing that neither Lutz nor Fox was scheduled to be at the institution on July 9, and unit notes from July 9 written by Weber. Weber's notes state that plaintiff did not eat breakfast or lunch and that plaintiff complained about withdrawal symptoms from medications that he had discontinued. Weber reported plaintiff's complaints to health services, who directed plaintiff to submit a written request for care. Dkt. #34-1 at 1. As for July 12 and 13, neither Weber, Lutz nor Fox recall plaintiff asking them to contact health services, and plaintiff's unit progress notes do not mention that plaintiff requested help from health services on either July 12 or 13. Fox's notes from July 13 state only that plaintiff ate lunch, took his medications, napped through most of the shift and met with his treatment facilitator.

Both sides agree that on July 12, defendant Finger, the pharmacy technician, brought the noon medication cart to the unit to distribute patient medications. Plaintiff approached Finger and put a health services request on the cart. He put his head down on the medication cart and told Finger that he had a headache, wanted to see a doctor and needed to be placed back on his medications. (Plaintiff states in his declaration that he also told Finger that he had a stomachache, had been vomiting, and had chest pain. But he also admits that he did not tell Finger all of his symptoms because he had written them down in his health services request and he was in too much distress to speak much. Dkt. #51, ¶ 25.

4

Finger told plaintiff that he needed to follow the procedures like everyone else and place his health services request in the appropriate request box on the unit, to be picked up and triaged that night by health services staff.  (Plaintiff says that Finger also said that plaintiff was just "having a bad hair day.")  Finger had to deliver medications to numerous patients at Sand Ridge and she did not want to be distracted by individual patients requesting medical care.  Finger gave plaintiff his medications and told plaintiff again that he needed to take his request to the appropriate place.  Plaintiff took his medications and said, "This fucking place! You fucking people claim to care and are supposed to be here to help and then you tell me to put it in the box!"  Plaintiff walked away without ingesting his medication. Finger called after him to tell him that he forgot to take his medication, but plaintiff keep walking.

Defendant Giles was plaintiff's treatment facilitator.   On July 13, Giles visited plaintiff in his room to discuss a behavior problem.  Plaintiff told Giles that he had been sick and was not sure where the pain was coming from.   Giles was not trained to recognize symptoms of a heart attack, to provide medical care or to schedule appointments with health services, but he agreed that plaintiff did not look himself and encouraged him to seek a health services appointment.  Plaintiff told Giles that he had asked to be seen.  (Plaintiff did not tell Giles that he had left his health services request on the medication cart.)   Giles encouraged plaintiff to double check his request or put in another request to be seen, and plaintiff said that he was doing everything he was supposed to in order to be seen by health services.  Besides telling Giles that he was sick and in pain, plaintiff did not seem different

5

from his usual self.  Giles made a note of his conversation with plaintiff in his progress notes, but he did not report plaintiff's sickness to anyone.

On July 16, defendant Lutz found plaintiff in the shower, bent over and appearing to vomit.  Lutz called health services and reported plaintiff's symptoms.  Then Lutz brought plaintiff to health services in a wheelchair.  Plaintiff was complaining of arm numbness and chest pain.  Defendant Thomas, the head of nursing, assisted another nurse in placing oxygen tubing into plaintiff's nose so that he could receive oxygen.  The oxygen apparently was not turned on, or the oxygen valve was not open, but Thomas did not realize it at the time.  Plaintiff was also given nitroglycerin, to aid in blood flow and oxygen to the heart, aspirin and an EKG.  After reviewing the EKG, Thomas realized that plaintiff was having a heart attack.  She contacted defendant Dr. Kattenbraker, who recommended that plaintiff be sent offsite for emergency treatment for his heart attack.

An ambulance arrived, and health services staff assisted in transferring plaintiff to the care of the emergency care technicians.  The emergency care technicians had to perform first aid on plaintiff while he was in the ambulance.  The emergency medical technicians did not request assistance from Dr. Kattenbraker and did not ask for an examination room to treat plaintiff.  Eventually a helicopter was called and plaintiff was transported to Madison for treatment.

OPINION

Plaintiff alleges that he suffered a heart attack from July 9 to July 16, 2018, and that

6

defendants disregarded his symptoms and failed to arrange for medical treatment.  He brings claims under the constitution and Wis. Stat. § 51.61.

Both sides analyzed plaintiff's constitutional claims under an Eighth Amendment "deliberate indifference" standard.  However, because he is a civilly-committed detainee, plaintiff's claims arise under the Fourteenth Amendment's due process clause, not the Eighth Amendment.  Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008); Rogers v. Smestad, No. 20-CV-514-BBC, 2020 WL 3488436, at *1 (W.D. Wis. 2020); Bevan v. Rustad, 2020 WL 777894, at *1 (W.D. Wis. Feb. 18, 2020).  A medical provider acting under state law violates the Fourteenth Amendment if that individual's actions are "objectively unreasonable." Miranda v. County of Lake, 900 F.3d 335, 352-53 (7th Cir. 2018) (applying standard from Kingsley v. Hendrickson, 576 U.S. 389 (2015)).  Therefore, to succeed on a claim that defendants violated his Fourteenth Amendment rights to adequate medical care, plaintiff must show that (1) he suffered from an objectively serious medical condition, and (2) defendants' response to it was objectively unreasonable.  Miranda, 900 F.3d at 352-53. A showing of negligence or even gross negligence is not sufficient.  Id. at 353.

Defendants agree that plaintiff was suffering from an objectively serious medical condition between July 9 and 16, but they deny that they acted unreasonably.  I will discuss plaintiff's claims against the individual defendants below.


A.  Defendants Bellile, Moran, Krause, Holmes, Garrigan, Smith, Dynes and Brown

To be held liable under § 1983, a defendant must have caused or participated in a constitutional violation.  Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012); Burks

v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009).  In this instance, plaintiff failed to submit any evidence showing that the following eight defendants were involved in any way in the relevant events:   Doug Bellile; Anne Moran; Mike Krause; Greg Holmes; Mike Garrigan; Cory Smith; Bill Dynes; and Suzanne Brown.  Plaintiff says nothing in his response brief as what these defendants did to violate his rights.  Therefore, I will grant defendants' motion for summary judgment as to those defendants.

### B.  Defendants Giles and Finger

Plaintiff contends that defendant Finger, the pharmacy technician, violated plaintiff's constitutional rights by failing to deliver his health services request to nursing staff or to otherwise insure that plaintiff received medical care.  Similarly, plaintiff contends that defendant Giles, his treatment facilitator, violated his constitutional rights by failing to contact health services after learning that plaintiff was not feeling well and had not received care.

Both Finger and Giles could have done more to insure that plaintiff received prompt medical care.  However, their actions were negligent at most, and were not objectively unreasonable under the circumstances.  At the time plaintiff approached her, Finger was distributing medications to patients and needed to focus on her tasks so that she did not make mistakes.  Even assuming that plaintiff told Finger that he was experiencing a stomachache, had been vomiting and had chest pain, Finger did not know that plaintiff was having cardiac problems or that he needed emergency care.  Plaintiff had walked to the

medication cart on his own, was not obviously in need of emergency care, and plaintiff told Finger that he thought his symptoms were related to discontinuation of his medication. Finger was not trained to recognize the signs of a heart attack or to provide emergency medical care, so it was reasonable for her to instruct plaintiff to follow the appropriate procedures for seeking medical care from health services.  Finger did not know that plaintiff would fail to follow her instructions to submit his request properly.

It was also appropriate for defendant Giles to instruct plaintiff to submit a health services request for treatment.  Giles was a treatment facilitator who addressed behavioral problems; he was not a medical care provider.  He was not trained to recognize signs of cardiac distress or to provide emergency medical care to plaintiff.  Moreover, Giles thought plaintiff looked unwell, but he did not think that plaintiff was in need of emergency care, as plaintiff was able to discuss a behavioral matter with Giles.

Plaintiff argues that Giles should have done more to help him because he told Giles that he had submitted a health services request and had not yet been seen.  However, plaintiff has not submitted any evidence showing that he ever actually submitted a health services request through the proper channels.  Defendants have no record of plaintiff's submitting a request, and plaintiff's materials refer only to the health services request that he tried to give to defendant Finger.  Therefore, if plaintiff had followed Giles' instruction and submitted a health services request properly, it is likely he would have received care sooner.  For these reasons, plaintiff cannot succeed on a Fourteenth Amendment claim against Finger or Giles.  I will grant defendants' motion for summary judgment as to those

9

defendants.

## C.   Defendants Thomas and Kattenbraker

Plaintiff contends that defendants Thomas, the nursing supervisor, and Kattenbraker, the medical director, also failed to provide him with proper medical care.  However, the evidence shows that neither Thomas nor Kattenbraker learned about plaintiff's condition until July 16 when he was brought to the health services unit.  Once there, Thomas and Kattenbraker provided appropriate emergency medical attention and arranged for plaintiff to be transported to a hospital for further treatment.

Plaintiff argues that Thomas failed to insure that he was receiving oxygen through the tubing placed in his nose, but plaintiff has submitted no evidence suggesting that Thomas knew he was not receiving oxygen or that her actions were anything more than negligent. Plaintiff argues that Kattenbraker refused to assist emergency medical technicians in providing first aid to plaintiff, but plaintiff has submitted no evidence to support this argument.  Instead, the evidence in the record shows that the emergency medical technicians did not ask for any assistance or resources from Sand Ridge medical staff after Kattenbraker transferred plaintiff to their care.  Therefore, I will grant defendants' motion for summary judgment as to defendants Thomas and Kattenbraker.

## D.   Defendants Fox, Lutz and Weber

Plaintiff contends that the three psychiatric technicians who worked on plaintiff's

unit between July 9 and 16—Fox, Lutz and Weber—violated his constitutional rights by failing to insure that he receive care from health services staff for the serious symptoms he had reported.  The parties' descriptions about Fox's, Lutz's and Weber's involvement differ significantly.  However, for purposes of summary judgment, I must accept plaintiff's version of events as true, so long as it is supported by admissible evidence.  Landmark American Ins. Co. v. Deerfield Construction, Inc., 933 F.3d 806, 809 (7th Cir. 2019).

Even accepting plaintiff's version of events as true, plaintiff cannot succeed with a Fourteenth Amendment claim against defendant Weber.  According to plaintiff, Weber's only relevant interaction with him was on July 12.  On that day, plaintiff was experiencing a headache, nausea, chest pain and numbness in his right arm.  He reported his symptoms to Weber and Lutz, who were on duty at the time.  Weber called health services staff immediately, and health services' instructions were that plaintiff should take Tylenol and put in a request to see a doctor.  Weber relayed these instructions to plaintiff.  Plaintiff says that he told Weber he needed to see someone right away, and Weber responded that no one was available, but that plaintiff should submit a health services request.

Weber's alleged response to plaintiff was objectively reasonable.  Weber was not trained to recognize cardiac symptoms and did not know whether plaintiff needed emergency medical attention.  Plaintiff also did not report that he thought he was experiencing a heart attack; he suspected he was suffering from withdrawals related to changing his medication.  Weber decided reasonably to contact health services and to report plaintiff's symptoms.  Weber also acted reasonably in deferring to the judgment of health

services staff, in relaying the instructions from health services to plaintiff, and in instructing plaintiff to submit a health services request. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) (institution staff who are not responsible for administering medical care are entitled to defer to the judgment of health care professionals). There is no evidence suggesting that Weber knew that plaintiff would fail to submit the request properly after defendant Finger declined to accept plaintiff's health services request during medication distribution.

Plaintiff also cannot succeed on a claim against defendant Fox related to her actions on July 12. Plaintiff says that he complained to Fox about his symptoms and stated that he had put in a health request but had not been seen, but that Fox told plaintiff that he had to wait to be called by health services because he had submitted a health form the day before. Fox's response was objectively reasonable. Fox did not know that plaintiff had simply left the health form on the medication cart and had failed to submit the health services request through the proper channels. Because plaintiff does not allege that he was displaying obvious symptoms of a medical emergency, Fox was entitled to rely on health services staff's assessment of plaintiff's medical needs. Id.

Plaintiff's claims against defendants Fox and Lutz regarding their actions on July 9 present a closer question. Plaintiff says that Lutz saw him vomiting and experiencing chest pain while he was showering, and that plaintiff later told Fox and Lutz that he was sick and needed medical attention. Plaintiff says that Fox and Lutz did not notify a shift manager or health services. Plaintiff submitted an affidavit from another patient that supports plaintiff's version of events. Dkt. #47. If plaintiff's version of events is true, a reasonable

12

jury could conclude that Fox and Lutz's responses were objectively unreasonable. Plaintiff's claims against Fox and Lutz would need to be resolved at a trial. (Defendants raise a qualified immunity defense, but that does not help Fox or Lutz. Reasonable persons in their position would have known that they could not ignore the serious medical needs of a patient. Campbell v. Kallas, 936 F.3d 536, 545 (7th Cir. 2019) (qualified immunity standard)).

Defendants Fox and Lutz deny that they saw plaintiff vomiting or spoke to him on July 9. In fact, they deny that they were working at all on July 9. Defendants have submitted a schedule showing that Fox and Lutz were not scheduled to work on July 9, and that defendant Weber completed the unit notes on that date. Dkt. ##34-1, 35-1.

Defendants' evidence makes plaintiff's version of events suspect. However, credibility determinations cannot be made at the summary judgment stage, James v. Hale, 959 F.3d 307, 317 (7th Cir. 2020), and as plaintiff points out, neither the schedule nor the unit notes prove conclusively that Fox and Lutz were absent on July 9. Defendants could have changed shifts after the schedule was written, and Weber could have completed the notes even though other technicians were working. Plaintiff also points out that some of the unit notes do not necessarily match the schedule.

That being said, plaintiff's claims against Fox and Lutz should not proceed to trial if defendants have conclusive evidence that neither defendant was working on July 9, such as video evidence, timesheets or some other explanation of the unit notes and schedule. Therefore, I will give defendants the opportunity to submit additional evidence on this issue. If defendants do not submit additional evidence by the date below, plaintiff's Fourteenth

13

Amendment claims against Fox and Lutz will proceed to trial.

### E. Patientris Rights Statute

Finally, plaintiff contends that defendants' actions violated Wis. Stat. § 51.61, which lists the rights of patients who are civilly committed by the state. Plaintiff points to §§ 51.61(1)(f) and (m) in particular, which state that patients "have a right to receive prompt and adequate treatment, rehabilitation and educational services appropriate for his or her condition," and a "right to a humane psychological and physical environment within the hospital facilities" that "afford patients with comfort and safety, to promote dignity and ensure privacy." Elsewhere in chapter 51, "treatment" is defined as "those psychological, educational, social, chemical, medical, or somatic techniques designed to bring about [the] rehabilitation" of the patient. Id. § 51.01(17). Section 51.61(7) provides a right of action against any person who denies or violates a patient's rights under chapter 51.

Defendants contend that plaintiff cannot maintain a claim under § 51.61 because the statutory provisions guarantee only that plaintiff receive prompt and adequate treatment for rehabilitation of his status as a sexually violent offender. Defendants cite Erbstoeszer by Leyes v. American Casualty Co., 169 Wis. 2d 637, 642, 486 N.W.2d 549, 551 (Ct. App. 1992), in which the Wisconsin Court of Appeals concluded that taking a patient for a recreational walk did not implicate the "adequate treatment" provisions of § 51.61(1)(f). The patient in Erbstoeszer was confined for psychiatric care, and the court explained that a nurse's decision to take the patient on a walk was not related to whether the hospital was

14

providing prompt and adequate psychiatric treatment to the patient.  Thus, the patient could proceed with negligence claims, but not with a claim under § 51.61.

Defendants argue that in this case, plaintiff's allegations are not actionable under § 51.61 because defendants' decisions about how to respond to plaintiff's medical complaints are not related to the provision of rehabilitative care for his sexual offenses.  Defendants' arguments are persuasive, and supported by the decision in Erbstoeszer.  Defendants' alleged actions (and inaction) in this case were related to plaintiff's physical complaints, and were not actions that denied plaintiff prompt and adequate sex offender rehabilitation.   In addition, plaintiff failed to respond in his opposition brief to defendants' arguments about § 51.61.  Therefore, I will grant defendants' motion for summary judgment as to plaintiff's claims under § 51.61.

ORDER

IT IS ORDERED that

1.  Plaintiff Peter Stojanovic's motion for court assistance in recruiting counsel, dkt. #52, is DENIED.

2.  Defendants' motion for summary judgment, dkt. #31, is DENIED with respect to plaintiff's claim that defendants Fox and Lutz violated his Fourteenth Amendment rights on July 9, as set forth above.  The motion is GRANTED in all other respects.

3.  Defendants may have until January 4, 2021 to submit evidence regarding whether defendants Fox and Lutz were working at Sand Ridge on July 9, 2018.  Plaintiff may have

until January 15, 2021 to respond.

    4.  The trial materials and motions in limine deadline is extended to January 22, 2021, with all objections and responses due February 3, 2021.

    Entered this 18th day of December, 2020.

            BY THE COURT:

            /s/
            _____

            BARBARA B. CRABB
            District Judge